IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**UNITED STATES OF AMERICA**

v.                                      CRIMINAL NO. 2:04-00019-03
                                                     2:04-00019-04
**BRANDI HAMBRICK**                                  2:04-00019-07
**ERIC GIRAULT**
**CABELL JOE PATMON**

### MEMORANDUM OPINION AND ORDER
### ON PRETRIAL MOTIONS HEARING

At a hearing held on July 22, 2005, defendant Hambrick appeared by counsel, David Schles, defendant Girault appeared by counsel, Mark French, defendant Patmon appeared in person and by counsel, David Perry, and the United States appeared by Assistant United States Attorney Stephanie L. Haines for the purpose of considering the parties' pretrial motions in this matter. As a preliminary matter, the court confirmed with defense counsel that defendants Hambrick and Girault had waived their right to be present in person for the pretrial motions hearing.

During the course of the hearing, counsel for the United States disclosed that it intended to dismiss the charges against defendant Patmon in this matter, and to proceed to trial only against defendants Hambrick and Girault. An order has since been entered to that effect (Doc. No. 312). Accordingly, the court deems **MOOT** the pretrial motions filed by defendant Patmon in this matter.

After confirming that the only pretrial motions pending before the court at the hearing were submitted on behalf of defendant Hambrick, defendant Girault having submitted no pretrial motions, the court heard argument from counsel for defendant Hambrick and from A.U.S.A. Haines with regard to defendant Hambrick's pending motions.  Defendant Hambrick's motion for disclosure of grand jury transcripts (Doc. No. 49) was resolved by an agreement between the parties that the United States would resubmit a complete set of all grand jury transcripts to each of the defendants.

The court then **DENIED** defendant Hambrick's motion for a bill of particulars (Doc. No. 48).  In so doing, the court noted that a bill of particulars is an unusual remedy, and that the voluminous nature of the discovery in this matter does not justify granting defendant's motion.  See United States v. Jackson, 757 F.2d 1486, 1491 (4th Cir. 1985) (holding that grant of a bill of particulars lies in the discretion of the trial court, and that a defendant may show an abuse of discretion by proving unfair surprise).  However, the court **GRANTED** defendant's oral motion to limit the United States' case with regard to the alleged conspiracy to those persons named by A.U.S.A. Haines at the hearing.  The court then **DIRECTED** counsel for the United States to submit a list of the names of these persons to the court and to counsel for the defendants.

The court next heard argument with regard to defendant Hambrick's motion to suppress (Doc. No. 50).  Counsel for the defendant stipulated certain facts with regard to the standing issue set forth in the Government's response to the motion to suppress, and further acknowledged that, with regard to the issue of defendant Hambrick's standing to challenge the search of the apartment, his motion asks the court to extend the concept of standing to a person who is not an overnight or invited guest of the owner.  This the court **DENIED** on the basis of Minnesota v. Carter, 525 U.S. 83 (1998).

The court then questioned counsel for the United States and for defendant Hambrick with regard to whether the police were obligated to obtain a separate search warrant in order to search the purse and the black luggage belonging to Hambrick that were found in the Washington Street apartment at the time the search warrant for that apartment was executed.  After hearing the testimony of Special Agent E.H. Kennedy on this point, the court took the matter under advisement.  Having now fully considered the matter, the court **DENIES** defendant Hambrick's motion to suppress as to both the purse and the luggage.

As an initial matter, the court notes that the United States Supreme Court has held that "[a] lawful search of fixed premises generally extends to the entire area in which the object of the

search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." United States v. Ross, 456 U.S. 798, 820-21 (1982). However, courts appear to disagree with regard to the circumstances under which such a search extends to the belongings of visitors to the premises when those belongings are found on the premises at the time of the search.  Having determined that the United States Court of Appeals for the Fourth Circuit has apparently not addressed the issue in a published opinion, the court has looked to cases from other circuits.

    Many jurisdictions approach situations like that at hand by analyzing what relationship the visitor whose belongings were searched bears to the premises that were the subject of the search warrant.  Where the visitor is more than a mere casual passerby – for example, where the visitor is engaged in criminal activity connected with the premises – the search of that visitor's belongings is generally upheld.  In United States v. Neet, 504 F. Supp. 1220 (D.C. Colo. 1981), the search of a visitor's briefcase was upheld where the visitor arrived at the scene during a drug transaction, and where he signaled to another man who was attempting to destroy evidence of the drugs when the police entered the house. Considering his implication in the criminal activity taking place at the premises, the Neet court found the visitor could have no

legitimate expectation of privacy in the contents of his briefcase such that it should be excluded from the search of the premises. Id. at 1228.  In so holding, the court distinguished the situation before it from one of a "'mere visitor' who suddenly found his belongings vulnerable to a search of the premises."  Id.; see also United States v. Giwa, 831 F.2d 538 (5th Cir. 1987), and United States v. Micheli, 487 F.2d 429 (1st Cir. 1973).

    Courts applying this "relationship test" also consider other factors, such as the time and circumstances under which the visitor and his or her belongings are found on the premises.  In United States v. Gray, 814 F.2d 49 (1st Cir. 1987), a controlled purchase was made from a woman at the subject residence, as a result of which officers obtained a search warrant for the premises.  Id. at 50. After completing a second controlled buy at the premises in the early hours of the morning, officers executed the search warrant and found the defendant, whose identity and connection with the residence were unknown, lying on the floor in the living room.  Id. Spotting a jacket draped over a chair in an outer room of the residence, an officer began to search it and found a bag of cocaine, as well as an identification card issued to the defendant.  Id.  The officer halted his search at that point and confirmed with the defendant that the jacket belonged to him.  Id.  The First Circuit upheld the search of the jacket, observing that the defendant was

not a "casual afternoon visitor to the premises." Id. at 51. "To the contrary," the Court continued, "he was discovered in a private residence, outside of which a drug deal had just 'gone down,' at the unusual hour of 3:45 a.m." Id.

Although the Gray court took care to note that there was no indication prior to the search of the jacket as to who owned it, notice on the part of police as to ownership of the belongings searched is not dispositive as to admissibility. This is made evident by the Neet case cited above, among others. For example, in United States v. Johnson, 475 F.2d 977 (D.C. Cir. 1973), the Court of Appeals for the District of Columbia Circuit upheld the search of a woman's purse found on a coffee table during execution of a search warrant. The search warrant was authorized for the apartment of a male suspect, and the police received notice prior to the search that the defendant, a female visitor to the premises, was also present in the residence. Id. at 978.

In finding the search of the purse authorized by the search warrant for the premises, the Court applied a different test from the "relationship test" used in the cases cited above. The Court applied what might be described as a "physical proximity test," and considered the fact that the purse was lying on a coffee table, rather than being carried on the defendant's person, at the time the search occurred. As such, the Court reasoned, any invasion of the

defendant's privacy entailed by the search was of a lesser degree than if she had been carrying the purse at the time it was taken and searched. Id. at 979. This "physical proximity test" has been applied similarly in other cases, as well. See, e.g., United States v. Teller, 397 F.2d 494 (7th Cir. 1968).

Both the "relationship test" and the "physical proximity test" are useful in analyzing a search pursuant to the Fourth Amendment. The latter test, of course, is the simplest to apply. However, it does not appear to be as thoroughly reasoned as its alternative. Although, as explained in relation to the Johnson case above, the "physical proximity test" includes at its core a concern for the degree to which a subject's privacy is invaded, applying the test with no other considerations could "facilitate the insulation of incriminating evidence from lawful searches through the simple act of stuffing it in one's purse or pockets." United States v. Young, 909 F.2d 442, 445 (11th Cir. 1990). The "relationship test," on the other hand, might be fairly criticized as promotive of inefficiency and uncertainty. See United States v. Vogl, 7 Fed. Appx. 810, 816 (10th Cir. March 2, 2001). However, by analyzing the relationship a person bears to the premises searched, the test is better able to take into account what legitimate expectations of privacy the person might have in his or her belongings.

The court need not resolve the issue of which of these tests better serves the purposes of the Fourth Amendment, as the search in question satisfies both. In the case before the court, officers had been monitoring defendants Hambrick and Girault and others prior to obtaining a search warrant. On the basis of their observations and because of evidence obtained by interception of telephone and cell phone conversations, the officials had reason to believe that these defendants and others were involved in illegal drug activity. Furthermore, their surveillance indicated that Hambrick and Girault, among others, had become suspicious that they were being followed by investigators. Based on their surveillance, officers obtained a search warrant for the Washington Street apartment, where they believed defendant Girault to be staying while in town. Upon arrival at the apartment, which the officers secured prior to obtaining the warrant, the officers found defendants Hambrick and Girault, as well as a third individual, Tarique Khan.

During execution of the search warrant, the officers located a woman's purse on a coffee table. Inside the purse they found approximately $900.00 in cash, as well as a driver's license in the name of defendant Hambrick. Additionally, officers discovered a black suitcase similar in appearance to one they had earlier seen in the possession of defendant Girault as he and defendant Hambrick exited from the hotel where Hambrick had been staying. Inside the

suitcase they found women's clothing and toiletries, and a bag containing more than $18,000.00 in cash.

It appears to be undisputed that neither the purse nor the suitcase was in the immediate possession or on the person of defendant Hambrick at the time of the search. Furthermore, there is significant evidence indicating that Hambrick was no "mere casual visitor" to the Washington Street apartment, but rather was there because of her apparent involvement, along with defendant Girault and others, in illegal drug activity. Accordingly, the search of Hambrick's belongings satisfies both the "relationship test" and the "physical proximity test," as set forth above, and the motion to suppress is denied.

The Clerk is directed to send and FAX a copy of this written opinion and order to counsel of record, and to send a copy to the Probation Office of this court and the United States Marshal for the Southern District of West Virginia.

It is SO ORDERED this 2nd day of August, 2005.

                                              ENTER:

David A. Faber
Chief Judge